OPINION OF THE COURT
Per Curiam.
The instant application by the Grievance Committee for the Tenth Judicial District pursuant to 22 NYCRR 691.3 to impose reciprocal discipline on the respondent is predicated upon an order of the Connecticut Superior Court, Judicial District of Stamford, dated January 16, 2013, which publicly reprimanded the respondent for violating Connecticut Rules of Professional Conduct rules 1.8 (a) (conflict of interest: prohibited transactions) and 1.9 (a) (duties to former clients). As a condition of his reprimand, the respondent was directed, inter alia, to take, and pass, the Multistate Professional Responsibility Examination within nine months after the date of the order.
The facts in the Connecticut disciplinary proceeding were presented as follows:
Julie Dillon Ripley Miller (hereinafter the complainant) purchased a house in Norwalk, Connecticut (hereinafter the property). She obtained purchase financing from Merrill Lynch Credit Corporation (hereinafter MLCC) in the amount of $1,375,000. As part of the financing agreement, the complainant deposited a certain stock account into a brokerage account at Merrill Lynch Pierce Fenner & Smith (hereinafter MLPFS).
In December 1999, the complainant left for Africa on a long-planned trip to see her daughter. She gave an accountant, Mr. Newman, power of attorney to secure a construction loan to complete work on the property. Mr. Newman secured a $7.5 million loan from MLCC, which was secured by a mortgage on the property, and by a pledge agreement of the assets in the brokerage account at MLPFS.
In February 2003, MLCC liquidated the brokerage account because the complainant had defaulted on her mortgage. Shortly thereafter, the complainant hired Joseph Tesoriere of Omni Solo, a consulting and financial services company, to assist her in the recovery of assets liquidated from her brokerage account at MLPFS. Tesoriere referred the complainant to the law firm of Begos, Horgan & Brown (hereinafter BHB), in which the respondent is a named partner.
*243 In April 2003, the complainant retained BHB to investigate and prosecute her claims against MLCC, MLPFS, and Mr. Newman. The complainant entered into a retainer agreement with the respondent, who also drafted the complainant’s agreement with Omni Solo.
In December 2006, BHB obtained a settlement with MLPFS through a New York Stock Exchange arbitration in the amount of $900,000. BHB and Omni Solo received $300,000 of the $900,000 as and for their fees.
In August 2007, BHB structured a settlement with MLCC, in which MLCC agreed to forego collection on the note and mortgage in exchange for the remaining assets in the brokerage account, which totaled approximately $5.4 million. Instead of requesting a release of mortgage to be filed in the land records, BHB took an assignment of the MLCC note and mortgage. BHB and Omni Solo thereupon created Orynchus LLC to receive and hold the assignment.
BHB and Omni Solo took assignment of the note and mortgage via Orynchus LLC, presumably to secure the outstanding fees they believed were due and owing to them. The note and mortgage were not modified to reflect the amount of debt paid to MLCC, or to reflect the amount of fees allegedly owed BHB. In essence, the complainant was still obligated on a mortgage of more than $7.5 million.
In May 2008, the complainant and Orynchus LLC received notices that the City of Norwalk would be selling the property at auction on July 14, 2008, because the complainant owed approximately $80,000 in real property taxes. The complainant paid the taxes to avoid the auction.
The respondent made efforts to solve the complainant’s financial problems, including urging the complainant to sell the property.
In January 2009, BHB, on behalf of Orynchus LLC, commenced a foreclosure action against the complainant for payment of their allegedly outstanding fees.
In 2010, after a conflict of interest issue was raised by the complainant’s new counsel, the respondent retained counsel to represent him in the foreclosure proceeding. The proceeding was subsequently withdrawn.
On January 11, 2012, the respondent executed an affidavit wherein he denied “some or all of the material facts” alleged in the Connecticut disciplinary proceeding, but acknowledged that *244 there was sufficient evidence to prove by clear and convincing evidence that he had violated Connecticut Rules of Professional Conduct rule 1.8 (a) in that, before engaging in a business transaction with the complainant, he failed to provide her with written notice that she should consider the desirability of seeking the advice of independent counsel, and that he failed to obtain informed consent, in writing, to the essential terms of the contract, and his role therein, because the terms of the contract failed to reduce the mortgage debt, despite the forfeiture of the entire $5.4 million in the MLPFS brokerage account.
In his affidavit, the respondent further acknowledged that, despite denying “some or all of the material facts,” there was sufficient evidence to prove by clear and convincing evidence that he had violated Connecticut Rules of Professional Conduct rule 1.9 (a) in that he commenced a foreclosure action on behalf of Orynchus LLC against his former client, the complainant herein, in the same or a substantially related matter, i.e., the assignment of the mortgage, in which he and his firm had previously represented the complainant, and in which the complainant’s interests were materially adverse to those of Orynchus LLC, the respondent’s client in the foreclosure.
On July 25, 2013, a notice pursuant to 22 NYCRR 691.3 was served upon the respondent, “according him the opportunity, within 20 days of the giving of such notice, to file a verified statement setting forth any defense . . . enumerated under subdivision (c) . . . and a written demand for a hearing” and advising that “in default of such filing . . . this court will impose such discipline or take such disciplinary action as it deems appropriate” (22 NYCRR 691.3 [b]).
In a verified statement dated August 8, 2013, the respondent asserted that he took and passed the Multistate Professional Responsibility Examination, as directed by the Connecticut Superior Court. To that end, he stated that the imposition of reciprocal discipline by this Court would be “unjust,” inasmuch as (1) this was a Connecticut matter; (2) it was fully addressed in Connecticut; and (3) he has fulfilled Connecticut’s requirement of providing a passing MPRE score within nine months. He added, however, that if this Court believes reciprocal discipline is warranted, such discipline should be comparable to the discipline imposed in Connecticut, i.e., a reprimand, and should not rise to the level of a public censure. No hearing was requested.
In conjunction with his verified statement, the respondent submitted a copy of his answer to the complaint filed in the *245 Connecticut grievance matter. He did not, however, furnish a copy of the complaint. The respondent’s answer asserted, generally, that the complaint was filled with “argument,” “half-truths,” and “outright falsehoods.” While the respondent went to great lengths to describe BHB’s long-term dealings (and frustrations) with the complainant, he ultimately conceded— consistent with the stipulation into which he entered in Connecticut—that BHB created, and was “the sole initial member” of, Orynchus LLC, which received an assignment of the complainant’s mortgage, and that BHB/Orynchus LLC ultimately commenced a foreclosure proceeding against the complainant (BHB’s former client).
Contrary to the respondent’s contention, a public reprimand in Connecticut is the equivalent of a public censure in New York (see e.g. Matter of Colarossi, 97 AD3d 117 [2012]; Matter of Jackson, 62 AD3d 97 [2009]; Matter of Lawler, 40 AD3d 1205 [2007]).
Under the totality of the circumstances, the Grievance Committee’s application pursuant to 22 NYCRR 691.3 to impose reciprocal discipline is granted, and the respondent is publicly censured in New York.
Eng, EJ., Rivera, Skelos, Dillon and Roman, JJ., concur.
Ordered that the petitioner’s application pursuant to 22 NYCRR 691.3 to impose reciprocal discipline is granted; and it is further,
Ordered that pursuant to 22 NYCRR 691.3, the respondent, Fatrick Walter Begos, is publicly censured.